### In re POLLACK.

District Court, S. D. New York.
Jan. 11, 1934.

Maxwell S. Mattuck, of New York City, for trustee.

Archibald Palmer, of New York City (Samuel Masia, of New York City, of counsel), for respondent.

PATTERSON, District Judge.

The application is to punish the bankrupt for contempt. The question relates to the sufficiency of the service of the orders of the court. After a proceeding of which the bankrupt had notice and in which he regularly appeared, the court ordered him to turn over certain books to the trustee in bankruptcy. A copy of the order was served on his attorney. There having been no compliance, the court issued an order for the bankrupt to show cause why he should not be punished for contempt. A copy was served on his attorneys, and an affidavit by a process server stated that service had also been made on the bankrupt personally on November 4, 1933, at his residence. On the return day, his attorney appeared in opposition and submitted an affidavit by the bankrupt's wife to the effect that the papers had been slipped under the door of the apartment and that the bankrupt had not been home for months. The court referred the issue of personal service to a special master. The latter has reported that in his opinion the bankrupt was not served.

 1. The weight of evidence indicates that the man who was served on November 4 was the bankrupt. I find nothing improbable in the testimony of the two process servers. That they went to the bankrupt's apartment in the evening of that day, which was a Saturday, is conceded. One of them, Rudnick, testified that he asked for the bankrupt; that a woman who came to the door said that he would be back in half an hour; that then the bankrupt's wife appeared and said he was out of town. Rudnick stated that he then went down to the street and made arrangements with his companion, Schwartz, whereby he would watch on the street and Schwartz would wait in the vestibule. The bankrupt's wife then came out and walked up and down; Rudnick moving down the street a short distance so as not to be observed. An automobile of the color and type of that driven by the bankrupt then stopped in front of the place, and the wife talked to the man in it. The man went into the building, and Rudnick gave a whistle as prearranged with Schwartz.

Schwartz corroborated Rudnick as to what transpired between them on the street. He testified that he was in the rear of the apartment house when he heard the whistle; that, as he hurried into the house, he saw a man going up in the elevator; that he ran up the stairs, two flights, and saw a man just about to enter the apartment; that he addressed the man as Mr. Pollack, and said he had some papers, but that the man ignored him; that he then laid the papers on the man's arm and departed.

The bankrupt's wife was called in opposition. She testified that Schwartz had called and had been told by her that her husband was out of town; that later the papers were found outside the door. She stated that she had not seen the bankrupt in New York City for several weeks or months, but in this she was contradicted by the superintendent of the house, who testified that he saw and talked to the bankrupt twice during the week following the day of the alleged service. The wife's testimony is unsatisfactory in other respects. She evaded saying whether or not the signature to a paper shown her was her signature. She also denied that her husband had an automobile, although here also the superintendent contradicted her.

I am satisfied that the testimony of the process servers, as well as that of the superintendent, was the truth. It is certainly more convincing than the wife's testimony. If the process servers had been concocting a story, they would have made the matter of identification much stronger. They would have had the man who was served admit then and there that he was Pollack. The special master did not find that the process servers were not telling the truth as to what had occurred; he did not accept the wife's version in preference to theirs. His finding was simply that the testimony failed to show that the man who was served was the bankrupt. He was not satisfied as to identity. And yet the inference that the man served was actually the bankrupt is a strong one. The bankrupt was expected back; his wife was in the street, apparently to warn him; the man served drove an automobile like that used by the bankrupt; he was about to enter the bankrupt's apartment when served. If the man who was served had been another, it cannot be doubted that the bankrupt's attorney would have produced that other man before the special master.

The papers served were the order to turn over the books and the order to show cause why the bankrupt should not be punished for failure to turn them over. As already indicated, I am satisfied that there was personal service of both orders on the bankrupt.

2. The trustee urges that, whatever the finding as to personal service on the bankrupt, service on the bankrupt's attorney was a sufficient service. The point seems to be a sound one. Order 4 of the General Orders (11 USCA § 53) provides, in part: "Notices and orders which are not, by the act or by these general orders, required to be served on the party personally may be served upon his attorney."

There is nothing in the Bankruptcy Act (11 USCA) or in the General Orders that requires service of these orders on the bankrupt personally. It follows that service on the attorney of record was an adequate service. The facts in Re Levin (C. C. A.) 15 F. (2d) 3, were substantially the same as here. The Circuit Court of Appeals for the First Circuit held that service of the papers on the bankrupt's attorney was all that was needed to bring the matter before the court.

For these reasons, the application of the trustee will be granted and an order adjudging the bankrupt in contempt will be entered.